DETERMINED IN THE

# FIRST DEPARTMENT,

AT

# GENERAL TERM,

## 𝔐𝔞𝔶, 1879.

---

HELENA WILLICK AND BRACCONIA CHRIST BY
EDWARD H. STROTHER HIS GUARDIAN, RESPONDENTS, *v.*
ROBERT TAGGART AND MARY ANN TAGGART HIS
WIFE, IMPLEADED WITH OTHERS, APPELLANTS.

*Power of the guardian of a minor, to extend a mortgage.*

On October 25, 1873, one Samuel Christ was the general guardian of two minors,
one of about the age of eighteen years, and the other of about the age of ten
years. He then held for them a mortgage, given by the appellant, on which
there was then due $5,000, and interest for six months. On that day an agree-
ment was made by which the appellant paid to him $1,400, for four years'
interest in advance upon the mortgage, and Christ indorsed a receipt therefor
on the bond, and extended the time for the payment of the remaining sum
secured thereby until April 25, 1878.

Subsequently Christ absconded, but there was no evidence to show that the agree-
ment was collusive, or that the money had not been applied to the benefit of
the children. *Held*, that the extension was valid and should be sustained.

APPEAL from a judgment in favor of the plaintiffs, entered
upon the trial of this action by the court without a jury.

This action was commenced in September, 1877, to foreclose a
mortgage given by the defendant Taggart and wife.

*John A. Mapes*, for the appellants. At the time of the $1,400
payment by defendant, Samuel Christ was the general guardian
of both minors, and as such held the legal title to the bond and

mortgage, and his agreement to extend the same was valid. (*Chapman* v. *Tibbetts*, 33 N. Y. R., 289; *Field* v. *Schieffelin*, 7 Johns. Ch., 150; *Tuttle* v. *Heavy*, 59 Barb., 343; *Sutherland* v. *Brush*, 7 Johns. Ch., 17.) A general guardian possesses all the powers of a testamentary guardian. (R. S. Bks. [6th ed.], vol. 3, p. 165, § 10.) The payment was made in good faith, and the amount thereof should have been credited to the defendant. There was no pretence or finding that such payment was made collusively by defendant, or that the guardian failed to apply the moneys so received by him for the use and benefit of his wards. These facts not being found cannot be assumed. (*Comstock* v. *Ames*, 3 Keyes, 360; *Ward* v. *Center*, 3 Johns., *281; *Henry* v. *Henry*, 8 Barb., 592.)

*B. C. Chetwood*, for the respondents.

DAVIS, P. J. :

This is an action to foreclose a mortgage executed by the appellants to one Theodore Christ, as general guardian of the infant children of Bernard Christ, bearing date the 28th of April, 1868, to secure the sum of $5,600, payable five years after date, with interest at seven per centum per annum, payable half yearly. It comes before us upon the verdict and judgment, the findings of the court and exceptions thereto, but without any of the evidence given upon the trial.

Theodore Christ died prior to March 28, 1871, and on that day Samuel Christ was appointed general guardian of such children by the surrogate of the county of New York.

The court finds that the children of Theodore Christ were his daughter Helena, who came of age on the 12th of June, 1876, and his son Bracconia, who became fourteen years of age on the 7th of April, 1877 ; that on the 27th of April, 1871, $600 of the principal was paid to said Samuel Christ ; that on or about October 25, 1873, the appellant, Robert Taggart, paid to the general guardian $1,400 for four years' interest upon said bond and mortgage, there then being but six months' interest due, and the said guardian indorsed a receipt on the bond accompanying said mortgage for $1,400, in full payment of four years' interest from April

25, 1873, to April 25, 1877, and extended the time to pay the principal sum until April 25, 1878.

The court found, as conclusions of law, that the guardian had no authority to extend the time of payment of the principal beyond the majority of his ward Helena, or beyond the age of fourteen years of his ward Bracconia, and that the appellants were not entitled to any credit upon said bond and mortgage for any portion of the $1,400 so paid by him, except for so much thereof as paid the interest due to November 1, 1873, and that the principal sum of $5,000, with interest thereon from November 1, 1873, is, therefore, still due and unpaid upon said bond and mortgage, and ordered judgment accordingly. Due exceptions were taken. There is an absence in this case of any finding of collusion between the guardian and the appellant, and there is no finding that the money received for interest in advance was not applied in any form to the use of the wards or invested for their benefit. The question presented is the naked one, whether payment of the interest in advance and the agreement to extend the payment of the bond and mortgage was void for want of power in the guardian to receive the money and make the extension.

It is true the court found that the guardian absconded without finding at what time, but the plaintiff's reply to the answer alleges that he absconded about a year after the money was paid.

In the absence of all finding to the contrary it seems to us that the presumption would be that the guardian did his duty, and either applied or invested the interest paid in advance to or for the benefit of his wards.

In *Chapman* v. *Tibbits* (33 N. Y., 289) it was held that the general guardian of infants has the same power over the property and estate of his wards as a testamentary guardian, can receive moneys, secured to them by mortgage, and discharge the mortgage before the same becomes due.

In *Field* v. *Schieffelin* (7 Johns. Ch., 150) the guardian had assigned the bond and mortgage before its maturity, and Chancellor KENT said : "The bond was not due when it was assigned to the plaintiff; but if the money was wanting for the purposes of the trust, either for discharging incumbrances or for making more advantageous investments, or for payment of debts and for the

better maintenance and education of the ward, or for any purpose whatever connected with the faithful discharge of the trust, and beneficial to the infant, the guardian had just and lawful authority to raise the money by the assignment of the bond and mortgage. The necessity or expediency of the measure rested entirely in the judgment or discretion of the guardian.

And, again, in the course of the opinion, he said : "There is no direct or positive evidence that the guardian has in truth misapplied or wasted the infant's money. * * * But when it becomes necessary not only to establish the fact of breach of trust, but of a participation of the plaintiff in the fraud, we ought to have something more decisive than a presumption resting on such a basis." (His insolvency.) "It is very possible, and consistent with every established fact in the case, that the money received by the guardian from the plaintiff was duly invested in other property in the name and for the benefit of the infant."

We are not able to see any reason why a general guardian's power does not extend to the receiving interest in advance of its falling due. It is manifest that doing so might, under some circumstances, be highly advantageous to the trust, and the mere fact that interest has been received in advance by the general guardian, who has power to receive the principal before it matures, is of itself sufficient to justify the legal conclusion that he could use that power. The payment of the interest appears to have been made in connection with the agreement to extend the time for payment. In the absence of all fraud and collusion, we do not see why the general control which the guardian has over the estate of an infant does not authorize the extension of the time of payment to a date, at least, till the ward attains full age. Such extension may be invalid, perhaps, for the excess beyond the majority of the ward, and, as in this case, the agreement extended beyond the time when one ward arrived at age, it may perhaps be regarded as invalid *pro tanto.* But it would not, we think, be invalidated by the arrival of the other ward at the age of fourteen, because the guardianship would continue in respect of him beyond that period.

We think, in the absence of all proof of collusion, and of all proof tending to show the disposition of the moneys paid for

interest in advance, the conclusion of the learned court cannot be sustained.

The judgment should be reversed and a new trial ordered, with costs to abide event.

Brady and Potter, JJ., concurred.

Judgment reversed, new trial ordered, costs to abide event.