(109 App. Div. 10.)

### ROSENSTOCK v. DESSAR et al.

(Supreme Court, Appellate Division, First Department. November 17, 1905.)

1. PAYMENT—PRESUMPTIONS FROM LAPSE OF TIME.

A lapse of 24 years in the presentation of a certificate of deposit for payment, together with evidence that it had been paid, raises a presumption of payment thereof.

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Payment, §§ 179, 180.]

2. BANKS AND BANKING—CERTIFICATE OF DEPOSIT—PAYMENT—EVIDENCE.

In an action on a certificate of deposit which defendant alleged had been paid, a bookkeeper of the depositary, who had no personal knowledge of the transaction between the depositor and the depositary, testified from memory that the deposit remained an open account on the depositary's books, which had become lost, and could not be produced. Defendant offered in evidence abstracts made by an expert accountant, who had examined such books in connection with certain legal proceedings, showing the depositary's indebtedness and assets and a list of its creditors and debtors, with the amounts due to and from them, respectively, and in which nothing appeared to be owing the depositor. Held, that such abstracts were admissible to contradict such bookkeeper.

Appeal from Trial Term, New York County.

Action by Edgar H. Rosenstock, as ancillary executor of Levi Jacobs, deceased, against Adolph Dessar and others, as executors of David Stern, deceased. From a judgment for plaintiff and an order denying a new trial, defendants appeal. Reversed.

For former opinion, see 83 N. Y. Supp. 334.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, CLARKE, and INGRAHAM, JJ.

Charles E. Rushmore, for appellants.
Mortimer Stiefel, for respondent.

PATTERSON, J. This is an appeal from a judgment entered on a verdict in favor of the plaintiff on a second trial of the action, which was brought on a written instrument in the following words:

"New York, Nov. 24, 1874.
"Received from Levi Jacobs $1,500 on deposit at 7 per cent.
"[Signed]                    Dessar, Stern & Co."

Levi Jacobs died on the 23d of April, 1892. After his death, the writing or instrument above quoted was found in a pocketbook, with other papers relating to his affairs. It was never presented by any one for payment, so far as appears, until 1894, if then. The action was not brought until December, 1898, and therefore the instrument had been outstanding in the possession of Levi Jacobs, or his personal representative, for 24 years. During that interval, many changes had taken place in the membership of the firm which originally issued the instrument, but we are not required now to consider them further than to remark that Levi Jacobs had dealings with each concern up to the time of his death or its failure. The defense of payment is duly pleaded, and as the case is now presented we need consider that defense only. On the first trial the jury found for the plaintiff, but on motion the court set aside the verdict, and dismissed the complaint. On appeal we held that, while the trial court had discretion to set aside the verdict, still the complaint should not have been dismissed, because the issue of payment was for the jury, and hence we directed that another trial be had.

It is not to be disputed that in 1874 Levi Jacobs did deposit with the then firm of Dessar, Stern & Co. the sum of $1,500, and that through all the mutations of the membership of that firm there is no actual direct evidence that that distinct specific sum, as a separate and independent item of indebtedness, was ever paid. It is not material now to discuss probabilities, or to conjecture as to what was done, or should have been done, by the holder of the certificate, in view of the nature and present situation of the plaintiff's claim. On the former appeal (83 N. Y. Supp. 334) we held that there was no absolute controlling presumption of payment to be indulged in by lapse of time, because such a presumption would only arise in a legal action when the statute of limitations began to run, and it was said that a presumption of payment, where the statute has not run, is one of fact and not of law. But we held plainly that there was evidence to go to the jury on the defense of payment, and one factor to be considered was lapse of time, although it was remarked that the court was not authorized to say, as matter of law, that payment was established, based on a presumption of any character or of proof. The long outstanding character of this claim was a circumstance for the jury to consider. The doctrine of stale claims is an invention of equity, but, as was pointed out by Judge Andrews in Bean v. Tonnele, 94 N. Y. 384, 46 Am. Rep. 153, it has been recognized by courts of law and acted upon in a variety of cases. There is nothing in the opinion of this court on the former appeal which, when considered with relation to the aspect in which the case is now presented, precludes further inquiry into the subject. The question of payment was one of fact for the jury, to be determined by them upon all the proofs submitted. That was distinctly held. While pay-

ment is an affirmative defense, and must be pleaded as such, yet the defense being pleaded, the jury had before them the initial circumstance that this instrument had been in existence for 20 years, in the possession of the plaintiffs or their testator, without any clear evidence of a demand ever having been made, and that business relations were continued between the plaintiff's testator and the variously constituted firms of the defendants during many years. While there is no presumption of law to be indulged, yet it is settled that a long outstanding claim, with other evidence of payment, may be presumed to be paid unless countervailing reasons are shown. In the case of Bean v. Tonnele, supra, a promissory note was made in 1859, and an action was begun on it in October, 1880. The note was payable six months after date, and the defendant set up as defenses the statute of limitations and payment. The defense of the statute of limitations was not available because of the nonresidence of the defendant. To maintain the defense of payment, the defendant relied upon the lapse of time between the making of the note and the commencement of the action, and it was held by the Court of Appeals that a presumption of fact as to payment was raised, and that that was a matter to be passed upon by a jury; the court saying:

"The demand is stale. The claim is to recover upon a note more than twenty-one years past due, brought after the death of the only party by whom, as may be supposed, the defendant would have been able to show payment if the note had in fact been paid, and who for a period of seventeen years after the note became due was within the jurisdiction of the court, but against whom no proceedings were taken. The presumption of payment from a great lapse of time is founded upon the rational ground that a person naturally desires to possess and enjoy his own, and that an unexplained neglect to enforce an alleged right for a long period casts suspicion upon the existence of the right itself. This presumption may be fortified or rebutted by circumstances."

It is said in Grafton Bank v. Doe, 19 Vt. 467, 47 Am. Dec. 697:

"We take it to be well settled that courts are never at liberty to presume payment from mere lapse of time in any period less than that which is fixed by the statute of limitations. To hold otherwise would virtually be a repeal of the statute. No doubt lapse of time, connected with other circumstances and evidence tending to prove payment, may legitimately aid in establishing the fact."

It would seem that, irrespective or independently of a statute of limitations, payment of debts, whether created by specialty or ordinary contract, in connection with other circumstances, may be regarded as paid from lapse of time. The decision of this case does not depend upon a demand having been made, or when a demand might have been made; and it seems to me that within the cases cited, and in view of the facts appearing in evidence, the defendants were entitled to rely upon lapse of time, associated, as it was, with, and supplemented by, proof that the certificate or instrument had actually been paid. The defendants furnished affirmative proof that it had been paid in a general account. David Dessar testified that he signed the certificate of deposit, and swore, in effect, that that certificate had been paid. His testimony is that the account of Levi Jacobs appeared paid on the books of the defendants' firm, and that it was paid in merchandise and money drawn out by him. "He would come here and buy some goods

of other houses, and draw money to pay for them. He was also in the dry goods business, and bought of the dry goods houses, and drew out the money to pay these houses for the goods. The books show that this account had been balanced in 1881." There was evidence of payment to be submitted to the jury. The verdict being in favor of the plaintiff, they must have found that payment had not been made. The learned trial justice charged the jury to the effect that the statute of limitations had nothing to do with the case; that the defense was not that the claim is barred by the statute of limitations—that is, that it was outlawed, as the term is generally understood—for the defense is that it was paid, "and it is for you to find, as a question of fact from all the circumstances in the case, and the presumptions that you think ought to be indulged in from the facts as you find them to be, in accordance with the instructions of the court as given you, whether this obligation had been paid or not. Just that one question for you to determine." The court also said:

"I do charge you that in cases of stale demands there is a presumption of fact that the claim has been paid, and I also charge in this case, if you find that the delay in making a demand for payment on this certificate is unexplained, then that raises a presumption which alone would entitle the defendants to a verdict, unless the plaintiff has established by other evidence the fact of nonpayment."

That brings us to the consideration of the one point in the case which requires a reversal of the judgment. The plaintiff took the deposition of one Benjamin F. Ezekiel, who had been a bookkeeper of the defendants' firm during all its changes of membership from 1875 to 1882. Mr. Ezekiel testified to no personal knowledge of the transaction, but claimed to remember that the account of Levi Jacobs remained open on the books during the existence of the variously constituted firms down to 1882. His testimony is to the effect that the entry of $1,500 to the credit of Levi Jacobs, as he found it on the books when he took charge of them, remained undisturbed during the entire time of his connection with the firm; that it was considered a special deposit, drawing interest, and in no way identified with Levi Jacobs' merchandise account, which was kept on a separate page of the ledger. In answer to this the defendants offered to prove that at the time testified to by Ezekiel there was no open account of Levi Jacobs on the books, but, on the contrary, it had been fully closed, and that it embraced the item of this $1,500. David Dessar testified that his firm failed in 1884, and that at that time all the books of account were seized by the sheriff; that the accounts that the firm of Dessar, Stern & Co. had upon its books continued in the books of the succeeding firm. It further appeared that in the year 1884 one William A. Harding, an expert accountant, was employed to make an examination of the books, while they were in possession of the sheriff, in order to ascertain the condition of the firm. The witnesses David Dessar, Joseph B. Dessar, and Simon H. Stern all testified that Harding made such an examination, and that he prepared an abstract showing the indebtedness and assets of the firm, and also a list of its creditors and debtors, with the amounts due to and from them, respectively; and that the report was made in manifold form, and a copy given to each member of the firm, and no

indebtedness appeared to Levi Jacobs. Harding died before the commencement of the action. These witnesses testified that, after many efforts to find the books, they could not be located; that they had made an examination of every possible place, including the office of Mr. Stern, the office of Mr. Harding, and the houses of the living members of the firm, but without avail. Frank J. Burns, a deputy sheriff of the city of New York, who had been connected with the sheriff's office from 1874, and was an assistant deputy sheriff in 1884, testified that in 1884 one Davidson was the sheriff of the city of New York, and that he (Davidson) left the county of New York and went to New Mexico, and has never returned; that there was a custom in the sheriff's office, when books of account were seized, that after the assets of defendants were sold, and such defendants did not ask for the return of such books, they were stored with the auctioneer for a year or two, and then the auctioneer would dispose of them for old paper. It appears in evidence that Mr. Simon H. Stern and Joseph B. Dessar made an examination of the books with Mr. Harding, and that after Mr. Harding made his report it was verified by them. The defendants offered this abstract or report of Mr. Harding, the accountant, in evidence, for the purpose of contradicting the testimony of Ezekiel, the bookkeeper, and to show that the account of Levi Jacobs was closed. It was objected to, and the objection was sustained by the court. The defendants also offered evidence of other parties as to the condition of the books, and tending to show that the account of Harding was accurate, and that the Jacobs' account was fully closed, but it was not admitted.

This proof should have been allowed. The case is a peculiar one, in which all evidence should be admitted that bore upon a question of payment; and, as said by Judge Andrews in Bean v. Tonnele, supra, "we think this evidence was improperly excluded. The case is one in which the greatest liberality consistent with the rules of evidence should have been indulged in the proof of circumstances relating to the question of payment." In the present case the plaintiff had introduced the evidence of a bookkeeper who had no personal knowledge of the transaction, and who testified from memory as to the books of account. His testimony was very important as to the account being kept open in which the $1,500 item of the deposit was made. The evidence, on the other hand, of those who had examined the books was equally important as to what was contained therein. The books were lost, and could not be produced; but they had been subjected to examination and criticism in legal proceedings, and the results of such examinations were at hand, and could be resorted to. They were made by competent persons, and were admissible in evidence to contradict what Ezekiel said. Under the circumstances of this case, all available evidence within admissible lines should have been put before the jury.

Therefore, for the error in rejecting this evidence, the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

O'BRIEN, P. J., concurs. INGRAHAM, McLAUGHLIN, and CLARKE, JJ., also concur, and think that the verdict that this claim had not been paid was against the weight of evidence.